Brassard, J.
In July 2002, the Commonwealth of Massachusetts alleged that the Town of Wayland (“Town”) improperly disposed of recyclable materials in its municipal landfill. In response to the complaint of the Attorney General, the Town agreed to a penally of $25,000, $10,000 of which would be waived if no further violations occurred. In July 2004, the Commonwealth informed the Town that it had received notice of additional violations at the landfill; during this time, the Commonwealth was considering a demand of the $10,000 waived penalty. The Town asked the Commonwealth for a stay of the demand so that it could pursue its own investigation. The Commonwealth granted the Town’s request, imposing a deadline of September 15, 2004, later extended to October 16, 2004. On July 19, 2004, the Board of Selectmen (“Board”) discussed the impending penalty and deadline. At that meeting, the Board moved, “pursuant to Massachusetts General Laws Chapter 41, Section 23B” to designate Betsy Connolly (Chair of the Board), Michelle S. Wolf (Chair of the Board of Health), and Lauren Stiller Rikleen (Special Town Environmental Counsel), to conduct an investigation to determine the Town’s compliance with the Settlement Agreement. This group of persons was later named the Wayland Landfill Review Panel (“Panel”). The Panel was to “conduct an investigation . . . with respect to the operations at the Wayland Landfill, and to render a report of their findings, with recommendations, to the Board of Selectmen.” Board of Selectmen Meeting Minutes, •IA14, July 19, 2004. Subsequently, Ross Petty, a college professor who is also an attorney, joined the Panel.
Although the report of the Panel would be submitted to the Board and made public at the conclusion of the investigation, the Panel decided to conduct confidential interviews. No minutes of these meetings would be taken, and no other records or notes of the interviews would be released to the public. Town of Wayland Landfill Review Panel Operating Guidelines, ¶¶3-6. The intent of this confidentiality was to ensure voluntary participation and honest cooperation with the investigation process by employees of the Town and members of the public.
Subsequently, three registered voters of the Town, William Kilcoyne, Carol Kilcoyne, and Stanley Robinson (“Plaintiffs”), filed a claim against the Panel seeking multiple remedies for alleged violations of the Massachusetts open meeting law, M.G.L.c. 39, §§23A-23B. The claim sought 1) a declaration that the Panel is subject to the open meeting law; 2) a preliminary and permanent injunction preventing further violations of the open meeting law; 3) a remedy of past violations of the open meeting law; 4) an order invalidating any action taken by the Panel at any meeting where the open meeting law was violated. The matter before the court today concerns only the issuance of a preliminary injunction to prevent future violations; this court makes no ruling concerning relief for alleged past violations.
After an extensive hearing and careful review of the helpful papers filed by the parties, the motion for a preliminary injunction is granted.
Time-Bar and Standing
The Plaintiffs’ motion for an injunction is not time-barred, as they only seek injunctive relief to prevent future violations. “Upon proof of failure by any governmental body ... to carry out any of the provisions for public notice or meetings, for holding open meetings, or for maintaining public records thereof. . . the superior court sitting within and for the county in which such governmental body acts shall issue an appropriate order requiring .such governmental body ... to carry out such provisions at future meetings.” M.G.L.c. 39, §23B. (Emphasis added.) Although the Town contends that this requirement for the superior court to act is subject to a twenty-one-day statute of limitations, that time-bar applies only to invalidating past violations.[1] Because the requested preliminary injunction is sought to prevent future violations, this court makes no decision with respect to the applicability of the time-bar with respect to the other remedies sought by the plaintiffs in their complaint. In addition, the order requiring the governmental body to act in accordance with the open meeting law may be sought “by complaint of three or more registered voters, by the attorney general, or by the district attorney of the county in which the city or town is *412 located.” Id. As the plaintiffs are three registered voters, they have standing to pursue an injunction.
Open Meeting Law
In order to be governed by the open meeting law, the Panel must meet the definition of a “governmental body” in M.G.L.c. 39, §23A.[2] In Connelly v. School Committee of Hanover, 409 Mass. 232, 235 (1991), the Supreme Judicial Court stated that governmental bodies covered by the open meeting law are almost all “creatures of statute, ordinance, or bylaw.” In that case, a school superintendent appointed a selection committee for the purpose of assisting him in selecting a group of nominees for the position of principal at the high school. After reducing the field from sixty-eight applicants to seven candidates, the selection committee interviewed the finalists in private. The committee recommended one candidate to the superintendent, who passed the recommendation on to the school committee. The school committee formally appointed the recommended candidate in an open meeting. Id. at 233-34. The Supreme Judicial Court noted that the selection committee was an informal appointment by the superintendent, rather than created pursuant to a statute or by-law, and therefore distinguishable from several other town entities that had been considered government bodies in prior cases: a board of health, a board of selectmen, a school committee, a zoning hoard of appeals, and a housing authority. Id. at 235. Importantly, the Panel in this case is different than the selection committee in Connelly; the Board created it “pursuant to Massachusetts General Laws Chapter 41, Section 23B.” Board of Selectmen Meeting Minutes, SLA14, July 19, 2004. This delegation to the Panel of the power granted to a town board of selectmen to “make an investigation into the conduct and operation of any town department,” M.G.L.c. 41, §23B, makes clear that the Panel is a “creature of statute.”
In Connelly, the SJC also held that, if an individual or committee is not subject to the open meeting law, any subcommittee created to assist that individual or committee is itself not subject to the open meeting law:
Of special significance is the fact that the superintendent, because he is clearly not a “governmental body,” could, by himself, have accomplished the task of screening and interviewing candidates in a closed session, entirely free from the requirements of the open meeting law . . . We see no persuasive reason to hold that an interviewing and screening process, which is exempt from the open meeting law when carried out by the superintendent, should be subject to the law when carried out by individuals informally appointed by the superintendent to assist him.
Connelly, 409 Mass, at 235-36. In contrast, committees created by governmental bodies are themselves governmental bodies. See Connelly, n.7. As the Board is clearly a governmental body, any committee or board it creates to assist it in its statutory duties is likewise a governmental body.
Because the Panel is a governmental body, the operative language of the open meeting law applies to the Panel. Under the statute, “all meetings of a governmental body shall be open to the public” and “no quorum of a governmental body shall meet in private for the purpose of deliberating towards a decision.” M.G.L.c. 39, §23B. The Town contends that the activities of the Panel do not meet the statutory definitions of “meeting” or “deliberation.”[3] Specifically, the Town urges that “the Review Panel is not charged with making any decisions, nor attempting to arrive at any decision on any public business. The corporal body which will be deliberating and making decisions is the Board.” Opposition to Motion for Preliminary Injunction 15. However, this argument was rejected by the Appeals Court in Nigro v. Conservation Commission of Canton, 17 Mass.App.Ct. 433 (1984). In Nigro the seven-member conservation commission of the Town of Canton appointed a three-member subcommittee to consider a conservation easement. The duties of that subcommittee included “making factual investigations, reporting its findings to the full commission, and making verbal recommendations as to actions which should be taken by the commission.” Id. at 434. Using reasoning that is analogous to the argument advanced by the Town, the trial judge concluded that fact-finding and generating recommendations were not deliberations: “The subcommittee here is involved only in the process of making educated recommendations to the full [commission]. Final decision[s] upon whatever alternatives are suggested by the subcommittee are deliberated by the full [commission]. The subcommittee in this case makes no governmental decisions. Its recommendations are considered in open session by the parent body.” Id. at 435 (quoting the trial judge).
However, the Appeals Court held that “the judge’s reasoning and the commission’s arguments fail to come to grips with the actual language of the definitions of‘Deliberation’ and ‘Meeting.’ ” Id. at 436. The Court determined that, given that the commission was a government body, “it is readily apparent that the Legislature contemplated that a subcommittee itself can ‘arrive at a decision’ (definition of ‘Deliberation’) or ‘make a decision’ (definition of ‘Meeting’) on any matter which the parent body can and does entrust to the subcommittee.” Id. As the Board delegated its power to investigate, in anticipation of a potential decision, the examinations conducted by the Panel and its final report comprise an integral component of any eventual decision by the Board. As the Nigro Court concluded, it is “axiomatic that any report of facts . . . after conducting whatever investigation may be appropriate in the *413 circumstancesisnecessarilygroundedonone or more decisions as to what the facts are. And, of course, the subcommittee cannot formulate a recommendation without deciding what it should be.” Id.
The Town contends that this case is governed by Pearson v. Board of Selectmen of Long meadow, 49 Mass.App.Ct. 119 (2000). In that case, the Appeals Court concluded that the open meeting law did not apply to a nonpublic meeting attended by the chairman of the Board of Selectmen of Longmeadow, the executive secretary of that board, the mayor of Springfield, two other Springfield officials, and two local residents for the purpose of reopening a street. The trial judge in Pearson decided that Nigro did not apply, finding that, “unlike the subcommittee in Nigro, the chairman did not have the authority to act on behalf of the board to make any decisions at the meeting.” 49 Mass.App.Ct. at 123. Although the Appeals Court affirmed the judgment, the critical factor was not the relative authority of the subcommittee, but rather that it was not a governmental body: “Neither the Nigro case . . . nor the statute provides support for the proposition that a single member of a governmental body who attends a meeting with others who are not members of the same governmental body — indeed, with officials of another municipality — is a ‘subcommittee’ within the meaning of the open meeting law.” Id. at 124. The Town contends that in both Pearson and in this case the entity at issue includes only one member of the town Board of Selectmen, and therefore should not be considered a “subcommittee” of the Board. This court concludes that, while the Panel is not a subcommittee of the Board, it is a “committee” within the statutoiy definition, because it was appointed by the Board to discharge at least part of a function exclusively committed to the Board by statute.
Finally, the definition of “meeting” notes that the governmental body must require that a quorum be present in order to make any decision. The operating guidelines adopted by the Panel require that “interview meetings will be attended by the interviewee and the three interview Panel members appointed by the Selectmen, plus the Town’s Special Environmental Counsel.” Town of Wayland Landfill Review Panel Operating Guidelines ¶4. This requirement that all four members of the Panel attend the meetings fulfills the quorum condition of the definition of “meeting” in M.G.L.c. 39, §23A. Therefore, the Panel’s investigation, creation of a recommendation and report of facts satisfy the definitions of “deliberation” and “meeting” under the open meeting law.
“Investigation”
The open meeting law is only applicable when it is “not inconsistent with the express provisions of any general or special law.” M.G.L.c. 39, §24. The Town contends that the open meeting law is inconsistentwith the express provisions of c. 41, §23B.[4] The Town maintains that the public nature of the report that results from the statutory investigation implies that the investigation itself may be conducted in secret. This argument is not persuasive. Chapter 41, Section 23B does not provide a definition for “investigation” nor does it state that an investigation is to be performed in secret. Furthermore, no case is available that defines “investigation,” or suggests that c. 41, §23B is inconsistent with the open meeting law by permitting investigations to be conducted in secret. In fact, the definition of investigation given by the defendant in its Opposition to Motion for Preliminary Injunction does not mention secrecy.[5] The closest judicial consideration of investigations in the context of the open meeting law exists in Nigro. As noted above, the activity of the subcommittee at issue in that case was to conduct “factual investigations,” report its findings, and make recommendations. Nigro, 17 Mass.App.Ct. at 434. As the Appeals Court held that the open meeting law applied to the activities of the conservation commission subcommittee, the open meeting law must also apply to the Panel — whose activities are likewise to investigate, to report, and to recommend. This court respects the Town’s contention that the investigation by the Panel is enhanced if it is performed confidentially. That advantage must yield, however, to the policy adopted by the Legislature in the open meeting law.
Preliminary Injunction and Bond
The plaintiffs have satisfied the requirements for a preliminary injunction. Violations of the open meeting law cause irreparable harm to the public. In particular, the actions of the Town are contrary to the purpose of the open meeting law, which “manifests ... a general policy that all meetings of a governmental body should be open to the public.” Board of Selectmen of Marion v. Labor Relations Commission, 7 Mass.App.Ct. 360, 361 (1979), citing Attorney General v. School Comm, of Taunton, 7 Mass.App.Ct. 226 (1978). This court recognizes the attempt by the Town to solve a serious problem and simultaneously avoid a significant penalty imposed by the Commonwealth. Nevertheless, the possibility of the Town enduring a penalty for a violation of one law does not permit it to violate another.
The preliminary injunction requested is narrow; it only seeks to prevent future violations. A bond is not appropriate.
Inappropriate Party
Although the plaintiffs may have named the wrong party in their complaint, the motion will not be denied on that basis. The Town has defended vigorously and ably, and suffered no prejudice. The plaintiffs are given leave to amend to name the Town as a defendant.
*414 Order
The motion for a preliminary injunction is Allowed. The Town and the Wayland Landfill Review Panel are hereby enjoined from further violating the Massachusetts open meeting law, M.G.L.c. 39, §§23A-23B.

“Such order may invalidate any action taken at any meeting at which any provision of this section has been violated, provided that such complaint is filed within twenty-one days of the date when such action is made public.” M.G.L.C. 39, §23B.

“Every board, commission, committee or subcommittee of any district, city, region or town, however elected, appointed or otherwise constituted, and the governing board of a local housing, redevelopment or similar authority; provided, however, that this definition shall not include a town meeting.” M.G.L.c. 39, §23A.

“ ‘Deliberation,’ a verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision on any public business within its jurisdiction . . . ‘Meeting,’ any corporal convening and deliberation of a governmental body for which a quorum is required in order to make a decision at which any public business or public policy matter over which the governmental body has supervision, control, jurisdiction or advisory power is discussed or considered; but shall not include any on-site inspection of any project or program." M.G.L.c. 39, §23A.

“The selectmen of any town may make an investigation into the conduct and operation of any town department. Upon completion of such investigation a report shall be submitted to the town clerk and such report shall be printed in the annual town report.”

Investigate: “to observe or inquire into in detail; examine systematically." Defendant’s Opposition to Motion for Preliminary Injunction, n.9, citing The American Heritage Dictionary (2d College Ed. 1985).